MOBIL OIL CORPORATION·et al., Plaintiffs,

v.

C. Marshall DANN, Commissioner of Patents and Trademarks, Defendant,

and

Exxon Research and Engineering Company, Defendant-Intervenor.

Civ. A. No. 76–0021.

United States District Court, District of Columbia.

Feb. 28, 1978.

Farell R. Werbow and Ellsworth H. Mosher, Stevens, Davis, Miller & Mosher, Arlington, Va., for plaintiffs.

Joseph F. Nakamura, Sol., and Henry W. Tarring II, Associate Sol., United States Patent and Trademark Office, Washington, D. C., for defendant.

David M. Pitcher, Finnegan, Henderson, Farabow & Garrett, Washington, D. C., for defendant-intervenor.

## MEMORANDUM OPINION

SIRICA, District Judge.

On October 27, 1976, this Court issued a Memorandum and Order remanding this case back to the United States Patent and Trademark Office for a reconsideration of plaintiff Mobil Oil Corporation's petition for relief under 37 C.F.R. § 1.183. *See Mobil Oil Corporation v. Dann*, 421 F.Supp. 995 (D.D.C.1976). This Order was premised on the conclusion that the Commissioner acted arbitrarily in denying Mobil's petition without at the same time considering the possibility that Mobil suffered discriminatory treatment when its patent application was rejected, while Exxon's assertedly similar application was granted a short time later.[1] *See Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). On that basis, the Court directed the Commissioner to take account of the possibility of unfair treatment against Mobil and to balance that possibility against other competing interests relevant to section 1.183's flexible standard of "an extraordinary situation, when justice requires."[2]

On remand, the Commissioner undertook to answer the question posed by the remand directive. In decisions dated December 26, 1976 and April 18, 1977, the Commissioner determined that the denial of Mobil's patent application was not the product of overt discrimination in the sense that a single decision-making authority within the Patent Office entertained both applications and made opposite decisions. But he acknowledged that a comparison of the two applications revealed that the Patent Office might have engaged in inadvertent discrimination. As stated by the Commissioner:

it is difficult to say that the Office as a whole acted with entire consistency in its handling of the two cases. While the claims allowed in the Exxon application contained limitations not present in the Mobil case as rejected by the Board, the limitations do not obviously and without

---

1. At the time, the Court was of the opinion that this discrimination might have occurred because a single authority within the Patent Office, the Board of Appeals, passed on both applications and found one patentable and the other not. The Court now recognizes that such was not the case. Actually, only Mobil's application was reviewed by the Board of Appeals, Exxon's having been granted in the first instance after consideration by the primary examiner. This clarification, however, does not compel the conclusion that Mobil could not have been the victim of discrimination. Rather, it only eliminates one setting out of which possible discriminatory treatment might have arisen. The possibility nevertheless remains that discrimination might have taken place when the primary examiner handling Exxon's application failed to declare an interference between the two arguably similar applications. In either instance, the question is essentially the same: As the Court earlier stated, it is "whether the two applications were as similar as Mobil claims they were." 421 F.Supp. at 998.

2. 37 C.F.R. § 1.183 provides:
   In any extraordinary situation, when justice requires, any requirement [of these rules] which is not a requirement of the statutes may be suspended or waived by the Commissioner . . . on petition . . . subject to such other requirements as may be imposed.

question confer patentability on what would be unpatentable without them.

And as he further noted:

I am simply unable to say with respect to the inquiry posed by Judge Sirica that there has been no "inadvertent discrimination" against Mobil, in the sense that its application may have been treated inconsistently with that of Exxon.

Because the Commissioner could not rule out the possibility of inconsistent treatment, he determined that Mobil was entitled to some measure of relief. Noting that section 1.183 permits the granting of relief "subject to such other requirements as may be imposed," the Commissioner granted Mobil a conditional remedy.[3] Specifically, he ruled that Mobil should be afforded its requested extension of time, but only if it agreed to relinquish any right to a patent on its now-abandoned application even if a later interference proceeding should be declared and even if Mobil should emerge from that contest as the prevailing party.

It is the validity of these rulings that is presently before the Court. Mobil asserts that the Commissioner's decisions should be vacated on the grounds that the Commissioner failed to comply with the Court's remand order and, beyond that, because the measure of relief fashioned by the Commissioner arbitrarily does not go far enough. Exxon makes just the opposite contentions. It maintains that the Commissioner's decisions arbitrarily go too far and, in addition, are in excess of statutory authority. The Commissioner, of course, argues that his treatment of Mobil's petition does not offend any statutory limitation and, as far as a suitable remedy is concerned, fairly accommodates the competing interests of both Mobil and Exxon in light of the equities on each side of the controversy. This Court agrees.

■ The question of whether the Commissioner adequately complied with the re-

mand order does not require extended discussion. The remand order basically directed the Commissioner to assess the likelihood that Mobil suffered discriminatory treatment in connection with the denial of its patent application and, based on that evaluation in addition to a consideration of other relevant factors, to fashion an appropriate remedy. In the Court's judgment, the Commissioner did just that. He reviewed the record and found that Mobil was not the victim of unfair treatment in the sense that a single decision-making authority within the Patent Office considered the competing applications filed by Mobil and Exxon and found Mobil's invention unpatentable, while finding that Exxon's merited the award of a patent. Thus the Commissioner ruled that Mobil was not entitled to any relief on account of overt discrimination because, as the chronology of events surrounding the two applications makes clear, the two sets of claims were never in a procedural posture where overt discrimination could have taken place.

Beyond that, the Commissioner evaluated the likelihood that Mobil suffered inadvertent discriminatory treatment when its application was denied by one agency authority, while Exxon's continued to be processed and was later granted by another. To make this determination, the Commissioner reviewed the two sets of claims and, on that comparative basis, found that the differences between them were not so obvious that he could unequivocally state that the Patent Office *as a whole* acted in an entirely—and in his view, satisfactorily—consistent fashion. That being so, the Commissioner ruled that a more detailed comparative analysis was in order. But rather than undertake that review himself, he proposed delegating that function to a primary examiner whose general responsibilities include comparing patent applications in the first instance to determine whether interference proceedings should be declared.

**3.** In the Court's view, the propriety of granting conditional relief under section 1.183 is beyond question. Petitions under that provision are addressed to the sound discretion of the Commissioner on a showing of "an extraordinary situation, when justice requires." Because of that inherently flexible standard, the rule rightly authorizes the Commissioner to grant equally flexible forms of relief to do justice according to the facts of individual cases.

Mobil faults the Commissioner for not making his own definitive evaluation of the two applications. Mobil basically argues that the Commissioner should himself have made that kind of conclusive determination as a threshold matter because, without it, there was no way for him to comply with the Court's directive of assessing the likelihood that Mobil suffered inadvertent discrimination. This argument, however, reads too much into the remand order. In referring the case back to the Patent Office, the Court only required the Commissioner to take account of a relevant factor, the possibility of discrimination, that he had earlier ignored in considering Mobil's petition. The Court in no way meant to tie the Commissioner's hands by obligating him to consider that possibility through the use of prescribed procedures. In the Court's estimation, the remand order was accorded full respect when the Commissioner reviewed the two sets of claims and based on that review concluded that further inquiry was necessary to reach a definitive conclusion on Mobil's claim of discrimination.

█ Nor can the Commissioner be faulted for granting the measure of relief formulated in his December 29, 1976 and April 18, 1977 decisions. In those rulings, the Commissioner granted Mobil's petition under section 1.183 but he did so upon condition that Mobil give up its claim to a patent on its application so that, if an interference proceeding should later be declared, the ultimate issue would become whether Exxon retains a patent on those claims subject to the interference, or whether Mobil, having relinquished its claim, will obtain a right to exploit the invention like any other member of the public at large. Contrary to Mobil and Exxon's sharply drawn contentions, this remedy is neither too little as Mobil would have it, nor too much in light of all the surrounding circumstances as Exxon

strenuously maintains. Rather, it represents a fair accommodation of the competing interests of both parties and, just as importantly, it takes account of the strong public interest in maintaining the integrity of the decision-making process within the Patent Office.

The remedy fashioned by the Commissioner is not too sparse from Mobil's perspective because it puts Mobil in as good a position as it was in when, on June 28, 1975, it consciously[4] (though in ignorance of one highly influential fact, that its competitor, Exxon, was seeking to patent a similar chemical process) let its application go abandoned by failing to timely appeal the adverse decision of the Board of Appeals that denied its claim to a patent. At that point in time, Mobil could have attempted to exploit its invention without the benefit of patent protection, or, as it did, it could have done nothing and run the risk that some other applicant would come forward and legitimately obtain a patent on a similar though independently developed invention.[5] It thus can fairly be said that, at this time, Mobil harbored no expectation whatsoever that it would ever be awarded a patent on its rejected claims. The only reasonable belief it could have had at the time was that its application had been treated fairly by the Patent Office. Any applicant can reasonably expect that much.

The remedy fashioned by the Commissioner gives Mobil access to procedures within the Patent Office that are capable of restoring Mobil, if it prevails, to a position where it can exploit its invention though, as stated, without the benefit of patent protection. That, in the Court's judgment, rightly places Mobil on the same footing it was on when it deliberately (though, again, in partial ignorance of relevant facts) let its application lapse through conscious inac-

4. The Court notes that use of the word "consciously" is not meant to express a view on whether Mobil's decision was "unavoidable" within the meaning of 35 U.S.C. § 133. The Court has strong doubts that Mobil's abandonment of its patent claim can be fairly said to have been "unavoidable" as that term is used in the statute. But it is unnecessary to decide

that question definitively given the Court's analysis of the relevant issues.

5. Apparently, Mobil could have also chosen to amend its application to cure the defects described by the primary examiner and later by the Board of Appeals.

tion. To now mandate that the Commissioner grant Mobil additional relief would in effect require imputing to Mobil expectations it did not have, and at the same time overlooking risks it saw fit to assume. In short, the relief afforded by the Commissioner in this case is no less than what Mobil can fairly lay claim to.

·By the same token, just as this relief is not too scant as Mobil contends, neither is it excessive from Exxon's point of view. It is true that the Commissioner's treatment of Mobil's section 1.183 petition puts Exxon in peril of losing its exclusive right to practice an invention on which it now holds a patent.[6] But this risk is presently a conjectural one since Exxon will lose its patent monopoly only if the primary examiner determines that interference proceedings are warranted and, even then, only if Mobil should emerge from those proceedings as the prevailing party. More importantly, the risk confronting Exxon as a result of the Commissioner's rulings is a fair one in the circumstances. In the Court's estimation, it is not unfair for the Commissioner to subject Exxon to the possibility of losing its patent since it may prove to be, depending, of course, on the outcome of future administrative proceedings, that discriminatory treatment played a part in making Exxon rather than Mobil the recipient of that patent. In subjecting Exxon to this possibility, the Commissioner was acting out of proper respect for the integrity of the Patent Offices' administrative procedures—for which he, as Commissioner, is ultimately responsible. He determined that these procedures may have been used with less than acceptable consistency in this instance, and rightly decided that this possibility warranted further inquiry and, if supported, remedial action. Seen in this light, the Commissioner's decisions initiating the corrective process specified in the December and April rulings are commendable and deserve the Court's approval. In no way can these rulings be deemed to exceed the bounds of reasonableness. The Commissioner acted in a matter calling for the exercise of his discretion, and he exercised that discretion responsibly.

■ Lastly, Exxon maintains that the Commissioner exceeded his authority in granting Mobil even limited relief without first finding that Mobil's abandonment of its patent application was "unavoidable" within the meaning of 35 U.S.C. § 133. Exxon basically claims that, while the Commissioner has broad authority to grant relief under section 1.183 with respect to *pending* patent applications, his authority in this regard is circumscribed when relief is sought with respect to *abandoned* applications, like Mobil's. According to Exxon, where an abandoned patent application is involved, the award of an extension under section 1.183 depends upon consideration of the abandonment statute, 35 U.S.C. § 133, and of that provision's "unavoidable" standard.[7]

The fallacy with this argument is that it rests on a false premise. The underlying—and in the Court's view, mistaken—assumption is that section 133 applies uniformly in all cases of abandonment *regardless of how a particular application became abandoned*. Section 133 states that "Upon failure of the applicant *to [timely] prosecute the application*," then the "application shall be regarded as abandoned by the parties thereto, unless it be shown to the satisfaction of the Commissioner that such delay was unavoidable." (emphasis supplied). In the case now before the Court, however, Mobil's application became abandoned not because of a failure to prosecute its application (Mobil

---

6. It should be pointed out that the Exxon patent contains claims that were not made by Mobil in its application. Thus Exxon runs the risk of losing its patent only with respect to the overlapping claims.

7. 35 U.S.C. § 133 reads:
    Upon failure of the applicant to prosecute the application within six months after any action therein, of which notice has been given or mailed to the applicant, or within such shorter time, not less than thirty days, as fixed by the Commissioner in such action, the application shall be regarded as abandoned by the parties thereto, unless it be shown to the satisfaction of the Commissioner that such delay was unavoidable.

had done so, and was unsuccessful), but because of a failure to timely appeal an adverse decision of the Patent Office's Board of Appeals. It follows that, since Mobil did not allow its patent to go abandoned by the inaction contemplated by section 133, section 133's standard has no application in this instance.

█ Furthermore, even assuming that the provision is generally applicable to situations where abandonment results from a failure to comply with the 60-day time limit for appeals set by 35 U.S.C. § 145 and 37 C.F.R. § 1.304, section 133's "unavoidable" standard is irrelevant for another reason. Section 133 provides that in instances where there is a failure to take action required to be taken in a period shorter than six months, abandonment takes place only if the applicant is given notice that inaction will result in the application's going abandoned. In this case, while the decision of the Appeals Board rejecting Mobil's application carried with it an *inherent* 60-day time limitation, it nowhere provided notice to that effect. Accordingly, even if section 133 were otherwise applicable in this case, its "unavoidable" standard still would not apply because Mobil was never given the notice required by section 133 and upon which that provision's operation depends.

Nor does *Eckey v. Watson*, 106 U.S.App. D.C. 16, 268 F.2d 891 (1959) compel a different conclusion. In *Eckey,* plaintiff's patent application went abandoned, as did Mobil's here, because plaintiff failed to timely commence a civil action in accordance with 35 U.S.C. § 145 and 37 C.F.R. § 1.304. The trial court dismissed plaintiff's complaint for a declaratory judgment declaring that the Commissioner possessed the authority to extend the time for commencing a civil action. But on appeal, it was held that 37 C.F.R. § 1.183 did in fact confer that authority on the Commissioner "In any extraordinary situation, when justice requires." Nowhere in *Eckey* is there any hint that the Commissioner's authority in this regard is in any way circumscribed by the requirements imposed by 35 U.S.C. § 133. The plain implication that arises from this silence is that section 133 is simply not relevant to the Commissioner's authority under 1.183. Indeed, there appears to be no principled reason for interpreting it in any other way.

To summarize the foregoing conclusions, the Court holds that the Commissioner acted within the bounds of his authority in rendering his December and April decisions, that these decisions adequately complied with this Court's earlier remand order and that the relief fashioned by the Commissioner is not arbitrary either because it goes too far or because it does not go far enough. Accordingly, Mobil and Exxon's motions to vacate the Commissioner's December and April decisions must be denied, and the Commissioner's second motion for summary judgment must be granted. An appropriate order will be issued of even date herewith.

APPENDIX

| MOBIL | EXXON |
|---|---|

10–22–70 APPLICATION FILED
5–18–72 FINAL REJECTION BY EXAMINER
9–11–72 NOTICE OF APPEAL TO BOARD OF APPEALS
12–04–72 APPEAL BRIEF FILED

3–16–73 APPLICATION FILED

3–20–73 EXAMINER'S ANSWER TO BRIEF WITH NEW REJECTIONS ADDED
4–18–73 REPLY BRIEF FILED

1–06–75 EXAMINER CONDUCTED INTERFERENCE SEARCH
1–10–75 LETTER BY EXAMINER INDICATING ALL CLAIMS ALLOWABLE

3–04–75 NOTICE OF ALLOWANCE MAILED

3–07–75 AMENDMENT UNDER RULE 312 FILED

4–07–75 NOTICE OF ENTRY OF RULE 312 AMENDMENT

4–29–75 DECISION BY BOARD OF APPEALS

6–28–75 APPLICATION BECAME ABANDONED BY FAILURE TO APPEAL TO COURTS

8–19–75 PATENT ISSUED

10–28–75 PETITION UNDER RULE 183 TO EXTEND TIME TO FILE COMPLAINT UNTIL 10–29–75

10–28–75 COMPLAINT IN C.A. 75–1775

10–28–75 AMENDMENT UNDER RULE 205(B) FILED WHICH COPIED CLAIMS FROM EXXON PATENT AND REQUESTED INTERFERENCE

12–15–75 COMMISSIONER'S DECISION DENYING PETITION

1–06–76 COMPLAINT FILED HEREIN C.A. 76–0021

10–27–76 COURT ORDER REMANDING CASE

12–29–76 COMMISSIONER'S DECISION

2–09–77 REQUEST FOR RECONSIDERATION

4–18–77 REVISED COMMISSIONER'S DECISION

5–18–77 MOTION TO VACATE DECISIONS OF 12–29–76 AND 4–18–77 AND COMPEL COMPLIANCE WITH ORDER